BRIDGET DONOHUE *vs.* WILLIAM DANIEL, Trustee, ELON J. WAY, and others.

*Sale of property under section 129, of Article 16, of the Code—Sufficiency of Title under the Sale—Obligation of Life tenant to keep down the Taxes and ground rents—Taxes and ground rents, Liens on the property—Claim for Incumbrances discharged—Subrogation—Extent of the Office and authority of an Administrator.*

The bill of complaint of E. J. W., filed on the 23rd of May, 1881, alleged, that on the 20th of May, 1879, a certain J. H. W., in his own right, and as guardian to his infant children, J. H. W., S. E. W. and E. W., being indebted to the complainant in the sum of $1000, upon a promissory note, dated the 20th of May, 1879, did execute a mortgage to the complainant upon certain property, specifically described in the mortgage. The bill also stated " that a large portion of the said indebtedness, or sum of one thousand dollars, was expended for the payment of taxes, ground rents, and other incumbrances due and owing upon said property at the time said indebtedness was created, and that to relieve said property of these incumbrances, and to improve the same, were the reasons for the creation of this indebtedness." It was alleged that the larger part of the property mortgaged was the property of the mother of the children already mentioned, and that she was dead, and administration on her estate had been granted to C. B. by the Orphans' Court of Baltimore City; and that the remaining portion was the property of J. H. W., the mortgagor; who it was also alleged was dead and intestate, and on whose estate no letters of administration had been granted. The bill also showed that taxes for 1878, 1879 and 1880, were then due, and the property was liable to be sold for the payment thereof. One of the children who was a minor when the mortgage was made, it was alleged had attained full age; that the others were still minors, and that all of them, with the said C. B., administrator of their mother, lived in the City of Baltimore. Process was craved for all these, and they were all summoned, appeared and answered, either in person or by guardian duly appointed. The mortgage which was filed with the

Donohue *vs.* Daniel, *et al.*

bill, set out that J. H. W., the mortgagor, was authorized by the Orphans' Court of Baltimore City to borrow the money on behalf of his wards, and to execute the mortgage. The administrator, C. B., answered, consenting to a sale, but reserving his rights as to the fund. J. H. W., one of the children, admitted the facts, and assented to a sale, but reserved his rights to the fund. The guardian for the other children answered ignorance, and submitted their rights to the protection of the Court. Subsequently the complainant filed his petition representing that the property was depreciating, and that notices of sale for taxes had been served, and asking the interposition of the Court by decree under sec. 129, of Art. 16, of the Code. Certain proofs were taken. The case was "submitted for decree or order of sale upon the petition filed therefor, and the proofs in the cause," under an agreement signed by the solicitors of C. B., of J. H. W. and the complainant, and by the guardian for the infants. The Court being "satisfied from the proofs that a sale will be ordered at the final hearing, and in view of the exigencies" of the case, ordered the sale. The sale was made and reported. The purchaser excepted on the ground that the trustee could not convey a good and sufficient title as per terms of sale. The Court overruled the exception and ratified the sale. On appeal by the exceptant, it was HELD:

1st. That the sale was properly authorized; that all the persons having an interest in the property were before the Court, and would be bound by the decree and the sale thereunder; and the purchaser's title could not be questioned.

2nd. That although the life tenant was bound to keep down the taxes and ground rents during his life tenancy, yet if it were not done, they were liens for which the property could be sold; and if a part of the incumbrance were incurred in the life time of the wife, that would not only be a lien on the property, but a legitimate claim against her infant children.

3rd. That notwithstanding the mortgagor might not have been properly authorized to execute the mortgage so as to bind the interests in remainder of his children and wards; yet, if he did remove those incumbrances existing against his wards and their property in his hands, he would have a just and legitimate claim against them, and he would be entitled to the benefit of the lien which he raised ; and the lender whose money was applied to that purpose was entitled to be subrogated to the guardian's rights in respect to the wards and their property.

Donohue *vs.* Daniel, *et al.*

In Maryland the office and authority of an administrator runs over the whole State, and when letters of administration have been issued in one county, the office is filled, and no other letters can be taken out upon the same estate in another county.

APPEAL from The Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and IRVING, J.

*James McColgan,* for the appellant.

*William Daniel,* for the appellees, the trustee and the complainant.

*William A. Hammond,* for the appellee, Charles Brandau.

IRVING, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City ratifying a sale made by the appellee, William Daniel, as trustee, under a decree of that Court, passed on the 18th of July, 1881, under section 129 of Article 16 of the Code, before final decree.

The sale was excepted to by the purchaser, for the purpose of settling the question whether she could get a good title, as against the parties in interest, under that sale. The only ground of exception alleged is, that "the trustee can not convey a good and sufficient title as per terms of sale." If he can, the exceptant is entirely content and willing to stand by her purchase, and by her counsel so stated to this Court.

As the case comes before us the only question for decision is one of jurisdiction, and whether the proper and

necessary parties were before the Court to justify the
exercise of the jurisdiction which was taken; so that the
title of all the parties in interest will pass by the sale
decreed.

The bill was filed on the 23d day of May, 1881, and
alleged that on the 20th day of May, 1879, a certain John
H. Walzl, in his own right and as guardian to his infant
children, J. Harry Walzl, Sidney E. Walzl, and Eleanora
Walzl, being indebted unto the complainant in the sum
of one thousand dollars, upon a promissory note dated
20th of May, 1879, did execute a deed of mortgage to the
complainant upon certain property specifically described
in the mortgage which is exhibited with, and as a part of,
the bill. The bill also states "that a large portion of the
said indebtedness or sum of one thousand dollars was
expended for the payment of taxes, ground rents and
other incumbrances due and owing upon said property at
the time said indebtedness was created, and that to relieve
said property of these incumbrances, and to improve the
same, were the reasons for the creation of this indebted-
ness." It is alleged, that the larger part of the property
mortgaged was the property of the mother of the children
already named, and that she was dead and administration
on her estate had been granted to Charles Brandau by
the Orphans' Court of Baltimore City; and that the
remaining portion was the property of John H. Walzl,
the mortgagor; who it is alleged is also dead and intestate
and on whose estate no letters of administration have
been granted. The bill also shows, that taxes for 1878,
1879, and 1880, are then due, and the property is liable
to be sold for the payment thereof. One of the children
who are alleged to have been minors when the mortgage
was made, is alleged to be then of full age, and the others
minors, and all residing in Baltimore City, together with
Charles Brandau, the administrator of their mother. Pro-
cess is craved for all these parties, and they were all sum-

moned, appeared and answered, either in person or by guardian duly appointed.

The mortgage, which is filed with the bill and as part of it, sets out that John H. Walzl was authorized by the Orphans' Court of Baltimore City to borrow the money on behalf of his wards, and to execute the mortgage which was executed.

The administrator of Mrs. Walzl answered consenting to a sale, but reserving his rights as to the fund. John H. Walzl admitted the facts and assented to a sale, but reserved his rights as to the fund. The guardian for the other children of Mrs. Walzl answered ignorance, and submitted their rights to the protection of the Court. Subsequently the complainant filed his petition representing that the property was depreciating, and that notices of sale for taxes had been served, and asking the interposition of the Court by decree under sec. 4, of Art. 64, of the "Revised Code," which is sec. 129, of Art. 16, of the Code. Certain proofs were taken which are not in the record. The case was "submitted for decree or order of sale upon the petition filed therefor and the proofs in the cause," under agreement in the above language, signed by the solicitors of the administrator of Mrs. Walzl, of John H. Walzl and the complainant, and by the guardian for the infants. The Court, stating that it was fully "satisfied from the proofs that a sale will be ordered at the final hearing, and in view of the exigencies" of the case, ordered the sale. The sole question is, was that order proper, and will a purchaser under it get a title to the property as against the parties to the suit, or the representatives of Mrs. Walzl. The sale was made and reported, and the exceptions were filed. The Court overruled the exceptions, and ratified the sale. The Court thought the sale was properly authorized, and that all the persons having any interest in the property were before the Court, and would be bound by the decree and the sale under it.

In this opinion we fully concur. The bill charges, that the money was originally loaned to the guardian for the purpose of removing incumbrances upon the wards' property, in the way of taxes and ground rents. Although the life tenant was bound to keep them down, during his life-tenancy, if it was not done it was a lien for which the property could be sold; and certainly if a part of the incumbrance was incurred in the life time of the wife, that would not only be a lien on the property, but a legitimate claim against the infant children of Mrs. Walzl. The direct proof of this is not in the record, though we are informed in the appellees' brief, that it exists, and was omitted from the record; and we understood that to be a *concessum* at bar. Notwithstanding the mortgagor may not have been properly authorized to execute the mortgage so as to bind the remainder interests of his children and wards; yet if he did remove those incumbrances existing against his wards and their property in his hands, he would have a just and legitimate claim against them, and he would be entitled to the benefit of the lien which he raised, (more especially when he did so by an order of the Orphans' Court.) When he borrowed money for that purpose, the lender whose money was applied to that purpose is entitled to be subrogated to the guardian's rights in respect to the wards and their property. In that aspect of the case we think the jurisdiction of the Circuit Court abundantly supported; and that from the proofs before the Court the jurisdiction was not irregularly or incautiously exercised. There can be no doubt that the power referred to is of an extraordinary character, and, as is said in *Cornell & Johnson vs. McCann & Dunkinson, et al.*, 37 *Md.*, 89, "should never be exercised but in plain and unquestionable cases. Indeed it should appear beyond reasonable doubt, either by proof or from the very nature of the case itself, that a sale must inevitably be decreed at the final hearing to justify the passing of the

interlocutory order, especially if applied for by the complainant only, and before the answer of the defendants, who may be affected by the sale."

As we understand this case the demands of the decision just cited are fully met. All the parties in interest had answered and consented to the sale except the infants, who had answered ignorance, and as against them there was sufficient proof to justify the Circuit Court's action.

There is one other fact in the case requiring mention and consideration. Administration upon the estate of Mrs. Walzl was granted by the Orphans' Court of Baltimore City to Charles Brandau, who was made a party to this suit, and who appeared and answered, assenting to the decree and sale, reserving only his rights in the fund. Subsequently, upon application, the Orphans' Court of Baltimore county granted letters on the same estate to Henry R. Eisenbrandt, on the ground that the deceased resided in that county. After the order of sale had been passed, Eisenbrandt was, on application of the complainant, made a party defendant, but afterwards, as to him, the bill was dismissed, the Court in its opinion saying, that "the office and authority of an administrator runs over the whole State, and when letters of administration have been issued in one county the office is filled, and no other letters can be taken out upon the same estate in another county. Here administration had been granted to Brandau in Baltimore City, into the validity of which this Court cannot collaterally inquire ; Brandau, therefore, represented all the interests of his decedent." The Circuit Court was clearly right in this position. The authority of Brandau as administrator could not be collaterally attacked. Until revoked, his letters were conclusive, and the estate of Mrs. Walzl was properly represented for the adjudication of all questions affecting it and those whom he represented. *Fishwick vs. Sewell*, 4 *H. & J.*, 393 ; *Raborg's administor vs. Hammond's administrator*, 2 *H. & G.*, 42 ; *Barney*

*vs. Patterson*, 6 *H. & J.*, 182 ; *Dimond's administrator vs. Billingslea*, 2 *H. & G.*, 264 ; *Comegys vs. The State*, 10 *G. & J.*, 175 ; *Edelen vs. Edelen*, 6 *Md.*, 288.  We think the purchaser's title under the sale ordered in this cause cannot be questioned, and that the order ratifying the sale should be affirmed.  What should be done with the money arising on the sale was by the Court expressly reserved for future decision and is not before us.  We do not, therefore, decide to what extent the appellee Way is entitled to allowance from the fund.  We have only said that it appears there were some liens resting on the property for which the estate of Mrs. Walzl, or her representatives, were answerable, namely, liens for taxes and ground rent accruing in her lifetime, for the payment of which with his money, the appellee Way should be reimbursed ; but beyond this, we have not felt the question was sufficiently before us in the proof to justify any expression of opinion.

> *Order affirmed, and*
> *cause remanded.*

(Decided 13th July, 1882.)